**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

SLOSS-BARRY, L.P., an Alabama )
limited partnership, )
)
    Plaintiff, )
)
v. )
)
WILLIAM JEFF WAITES, an )
individual, )
)
    Defendant. )

CIVIL ACTION NUMBER:

03-AR-2560-S

**ENTERED**

OCT 2 2003

**MEMORANDUM OPINION**

Pursuant to the order entered in the above-entitled case on September 18, 2003, accompanying the issuance of the temporary restraining order, the motion of plaintiff, Sloss-Barry, L.P. ("Sloss-Barry"), for preliminary injunction came on for hearing on September 26, 2003. Defendant, William Jeff Waites ("Waites"), was present in his own proper person and represented himself. By agreement of the parties, the hearing on the motion for preliminary injunction was consolidated with Sloss-Barry's prayer for permanent injunctive relief pursuant to Rule 65(a)(2), F.R.Civ.P. Because Waites was *pro se*, the court received his written memorandum, deeming it a motion to dismiss and an answer constituting a general denial. Insofar as deemed a motion to dismiss, Waites' motion will be denied. The court

1

heard evidence on the merits of Sloss-Barry's request for injunctive relief, leaving for later consideration Sloss-Barry's request for monetary damages.

Based on the oral testimony and documentary evidence, the court makes the findings of fact and reaches the conclusions of law that follow:

## FINDINGS OF FACT

### I.  Parties

1.   Sloss-Barry is a limited partnership existing under the laws of the State of Alabama with its principal place of business in Birmingham, Alabama.

2.   Waites is an individual over the age of 19 and is a resident of the State of South Carolina.

### II.  Plaintiff and The ONE FEDERAL PLACE Service Mark

3.   In 2000, Sloss-Barry engaged the public relations firm of Hodges & Associates to develop a name and "identity" for a proposed building to be built at the 1800 block of Fifth Avenue North in Birmingham, Alabama.   Sloss-Barry representatives believed it was important to have a distinctive name for the project and new building to distinguish it in the Birmingham commercial real estate market from other Class A office space.

4.    By September 2000, Hodges & Associates had proposed the name "One Federal Place" for the proposed building.    Defendant Waites played no part in generating the name "One Federal Place." His contention that he conceived the name independently and that he intended to use it for a purpose unrelated to the building to be known as "One Federal Place" is not credible.

5.    Sloss-Barry made preparations to advertise and market the name "One Federal Place" as the name for the building and the service mark which would identify the real estate services offered by Sloss-Barry respecting the new building.

6.    By approximately September 18, 2000, Sloss-Barry representatives requested that Waites obtain the internet domain names "onefederalplace.com" and "onefederalplace.net" for the use and benefit of Sloss-Barry; namely, to allow Sloss-Barry to set up an internet website at those domains.

7.    Acting at the request of Sloss-Barry, Waites obtained registrations for the internet domain names "onefederalplace.com" and "onefederalplace.net" on or about September 18, 2000.    He obtained those registrations in his own name instead of in the name of Sloss-Barry, but did not inform Sloss-Barry of that fact.

3

The motive of Waites in registering the names in his own name is irrelevant to the outcome.

8.   At that time, Waites was providing comprehensive computer services to Sloss-Barry, which included networking all of Sloss-Barry's computers and providing internet web hosting for Sloss-Barry.   Waites was acting as Sloss-Barry's agent with respect to those matters.   Likewise, Waites was acting as Sloss-Barry's agent in obtaining the internet domain names "onefederalplace.com" and "onefederalplace.net."   Sloss-Barry reimbursed Waites for the fees he advanced to register those two domain names.

9.   Shortly after Waites registered the internet domain names "onefederalplace.com" and "onefederalplace.net," Sloss-Barry posted an informational website about the proposed One Federal Place building at a website reachable at the internet address "www.onefederalplace.com."   That being the purpose of the registration, there was nothing surprising to Waites about its use by Sloss-Barry.

10.   Sloss-Barry conducted a ground-breaking ceremony at the proposed One Federal Place building site in early January 2001. That ground-breaking ceremony prominently featured use of the

4

mark ONE FEDERAL PLACE to identify the proposed building and the
real estate services to be provided at the site.


11.  Between September 2000 and approximately July 2002,
Sloss-Barry advertised and promoted the name and mark ONE FEDERAL
PLACE as the "identity" of a new Class A commercial office space
in downtown Birmingham, Alabama.


12.  In approximately July 2002, Sloss-Barry opened the One
Federal Place building to its first tenants.  Since July 2002,
Sloss-Barry has continued to advertise, market, and promote the
building and the real estate services associated with that
building under the name and mark ONE FEDERAL PLACE.


13.  The advertising and promotion of real estate services
offered under the ONE FEDERAL PLACE mark by Sloss-Barry include
use of the ONE FEDERAL PLACE mark on signage associated with the
building, advertising the space available in the building in
trade publications (such as the statewide *Alabama Commercial
Property Directory*), marketing and promotional materials used by
leasing agents, and the internet website operated by Sloss-Barry
at the URL "www.onefederalplace.com."


14.  Marketing and promotional materials used by Sloss-Barry

to advertise the building use not only the mark ONE FEDERAL PLACE, but also logos developed for Sloss-Barry for use with the ONE FEDERAL PLACE mark and the internet address for the One Federal Place website; namely, www.onefederalplace.com. Those materials have been used by Sloss-Barry since approximately September 2000, and still are used today.

15. Prior to the use of the mark ONE FEDERAL PLACE to identify Sloss-Barry's proposed building, no other building or project in the Birmingham area went by that name. In addition, while the area around that building is the site of the present and former federal courthouses for this district, the area has not previously been known as "Federal Place" or by any similar designation.

16. After the announcement of use of the mark ONE FEDERAL PLACE to identify the new building and the real estate services associated with it, the mark has been used in several newspaper articles and other print and internet media reporting about the real estate services offered by Sloss-Barry. In addition to local media, references to the ONE FEDERAL PLACE mark and its association with Sloss-Barry have appeared in publications outside Birmingham.

17.  Sloss-Barry continues to this day to market its real estate services for the One Federal Place building by using the ONE FEDERAL PLACE mark.  Use of the mark ONE FEDERAL PLACE is an important aspect of that active marketing plan, as is the internet website at www.onefederalplace.com.

18.  The Birmingham commercial real estate community recognizes the mark ONE FEDERAL PLACE as being exclusively associated with real estate services offered by Sloss-Barry, and the mark had acquired fame prior to September 2003 in that market.

19.  Up until approximately September 16, 2003, when the site went down due to the actions of Waites, Sloss-Barry operated an informational website at the www.onefederalplace.com domain. From that site, users could obtain information about the One Federal Place project and building, contact information for leasing representatives for the One Federal Place building, schematics for the building's floor plan and its footprint, and information about space available for lease in the building.  In addition to this information targeted toward potential tenants, the www.onefederalplace.com site also operated an on-line tenant request system by which tenants of the One Federal Place building could make requests of the building manager.

7

20.  In addition to the use of the ONE FEDERAL PLACE mark on the internet in the web site address www.onefederalplace.com, Sloss-Barry uses the "onefederalplace.com" domain name as an e-mail address for contact information for services and issues relating to the building.

21.  Prior to September 15, 2003, a search for "One Federal Place" on the internet search engine "Google" directed the user immediately to Sloss-Barry's site for the One Federal Place building.

## III.  Actions of Waites

22.  Waites is a former tenant of a member of Sloss Real Estate Group, an affiliate of Sloss-Barry.  As noted above, Waites provided computer services to Sloss-Barry and its affiliates, which included computer network services.  In or around the first quarter of 2002, Waites ceased being a tenant of Sloss Real Estate Group, and moved to South Carolina.

23.  In August 2003, Sloss Real Estate Group sued Waites for alleged unpaid rent and expenses.

24.  On or about September 15, 2003, Waites redirected the

computers which operate Sloss-Barry's One Federal Place website and e-mail service from the computers on which it had been operating to computers operated or controlled by Waites. The onefederalplace.com and onefederalplace.net domain names were about to expire, and Waites re-registered those domains in his name on or about September 16, 2003.

25. At the time that Waites first registered for Sloss-Barry the internet domain names "onefederalplace.com" and "onefederalplace.net" on or about September 18, 2000, he did not have trademark or other intellectual property rights in those domain names.

26. As of September 15, 2003, when Waites re-registered the internet domain names "onefederalplace.com" and "onefederalplace.net," he did not have trademark or other intellectual property rights in those domain names.

27. Prior to the time that Waites first registered the internet domain names "onefederalplace.com" and "onefederalplace.net" on or about September 18, 2000, those domain names did not consist of his legal name or a name that otherwise is commonly used to identify Waites.

28.  Prior to September 15, 2003, when Waites re-registered the internet domain names "onefederalplace.com" and "onefederalplace.net" those domain names did not consist of his legal name or a name that otherwise is commonly used to identify Waites.

29.  Prior to the time that Waites first registered the internet domain names "onefederalplace.com" and "onefederalplace.net" on or about September 18, 2000, he had not used the name "One Federal Place" as a business name, in advertising, as a trademark, service mark, or trade name, or otherwise in connection with the bona fide offering of any goods or services or of any goods or services he intended to offer.

30.  Prior to September 15, 2003, when Waites re-registered the internet domain names "onefederalplace.com" and "onefederalplace.net," he had not used the name "One Federal Place" as a business name, in advertising, as a trademark, service mark, or trade name, or otherwise in connection with the bona fide offering of any goods or services or of any goods or services he intended to offer.

31.  At the time Waites first registered the domain names "onefederalplace.com" and "onefederalplace.net" in September

2000, he understood that Sloss-Barry intended to call the proposed new building One Federal Place and that it intended to post a website at www.onefederalplace.com.

32.  When he re-registered the domains onefederalplace.com and onefederalplace.net on or about September 15, 2003, he knew that Sloss-Barry still offered real estate services under the mark ONE FEDERAL PLACE, that it still operated the building called One Federal Place, and that it maintained a website at the domain www.onefederalplace.com.

33.  Waites now claims that in September 2000 he had the intention to post his own "One Federal Place" website that would be a site that would provide information about the federal government at the domains onefederalplace.com and onefederalplace.net.  He admits that he did not disclose any such intention to anyone at Sloss-Barry, and his claim in this regard makes no sense.

34.  After September 15, 2003, Waites posted a website at the www.onefederalplace.com domain.  This was not, as Waites claims, a bona fide noncommercial or fair use of the ONE FEDERAL PLACE mark at a site accessible under the www.onefederalplace.com domain.

35.   The site posted by Waites contains links to the websites of several government agencies (Social Security Administration, Administrative Office of the U.S. Courts, Federal Trade Commission, etc.) and also to CNN's news internet site. Waites does not have the permission of any of those agencies or entities to link to their sites.

36.   In directing Network Solutions to re-direct the domain servers (i.e., the computers) associated with the onefederalplace.com and onefederalplace.net domain names from computers used by Sloss-Barry prior to September 15, 2003, to computers under his control, Waites knew it would divert consumers from Sloss-Barry's on-line location to Waites' site.

37.   At the time of the hearing on Sloss-Barry's motion for preliminary injunction, a computer user attempting to access the site at www.onefederalplace.com would be directed not to Sloss-Barry's One Federal Place site, but to the website operated by Waites.  Waites intended for this to occur, and admitted that he hoped to drive traffic to his site so that users would purchase his web hosting services available at the site (in addition to the federal government information available).

38.  Although settlement negotiations are not ordinarily admissible into evidence, Waites' interest here is revealed by the fact that he offered to transfer, sell, or otherwise assign the onefederalplace.com and onefederalplace.net domain names to Sloss-Barry in consideration of Sloss Real Estate Group forgiving all or a portion of the sums sought by Sloss Real Estate Group in the rent collection lawsuit filed by Sloss Real Estate Group in approximately August 2003.  Waites made that offer prior to his having used the onefederalplace.com and onefederalplace.net domain names in the bona fide offering of any goods or services. He made that offer before Sloss-Barry filed this lawsuit.

39.  While at the time of this hearing on Sloss-Barry's motion for preliminary injunction Waites had not posted any content at the onefederalplace.net domain, he also initially registered that domain name in September 2000, and re-registered it on or about September 15, 2003.

## IV.  Likelihood of Confusion Between Sloss-Barry's and Waites' Use of ONE FEDERAL PLACE.

40.  The ONE FEDERAL PLACE mark is a suggestive mark, as it suggests characteristics of the services offered by Sloss-Barry and requires an effort of the imagination by the consumer in order to be understood as descriptive.  The mark therefore is a

13

"strong" mark entitled to a broad scope of protection.

41.   The marks used by the parties are identical.   Sloss-Barry uses ONE FEDERAL PLACE.   Waites uses not only ONE FEDERAL PLACE on the content of his website, but also the domain name onefederalplace.com.

42.   Although the services provided by the parties differ (real estate services vs. web hosting and informational services) there is some similarity between the parties' sales methods, to the extent that both parties advertise at their internet website. It is significant that print promotional materials that have been disseminated by Sloss-Barry display the address for its One Federal Place website; namely, www.onefederalplace.com.   Thus, potential tenants that have received those promotional materials would be likely to encounter Waites' website when they attempted to reach Sloss-Barry's site by referring to the promotional materials.   It also is significant that the internet search engine Google directs users of that service looking for "One Federal Place" to the site available at www.onefederalplace.com.

43.   There is some similarity in advertising methods to the extent that both parties advertise using their website.   Sloss-Barry advertises in other media.   To date, Waites has conducted

no advertising other than posting content on his website at www.onefederalplace.com.

44.   Waites adopted the ONE FEDERAL PLACE mark for use on his website after September 15, 2003, with the intention of deriving a benefit from Sloss-Barry's prior use of the mark, and re-registered the onefederalplace.com and onefederalplace.net domain names with the similar intention to usurp that goodwill.

45.   There is a likelihood of confusion with respect to the source or origin of the services Waites offers under the mark ONE FEDERAL PLACE or a likelihood of confusion with respect to the affiliation, or sponsorship of those services with the services of Sloss-Barry.

## CONCLUSIONS OF LAW

1.   This court has subject matter jurisdiction over this action, venue for this action is proper in this judicial district, and this court has personal jurisdiction over the parties.

2.   To prevail in their request for a preliminary injunction, plaintiffs must show: (1) a substantial likelihood of success on the merits, (2) that they will suffer irreparable

injury unless an injunction issues, (3) that Plaintiffs' injury outweighs possible injury the injunction may cause to Defendants, and (4) that an injunction would not disserve the public interest.  <u>See</u> <u>CBS Broad., Inc. v. Echostar Communications Corp.</u>, 265 F.3d 1193, 1200 (11th Cir. 2001) (citing <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000.)

3.   The court has exercised its authority pursuant to Rule 65(a)(2) to consolidate the preliminary injunction hearing with the trial of the action on the merits with respect to the equitable relief sought by Sloss-Barry, which has the effect of converting Sloss-Barry's motion into an application for a permanent injunction.  "The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success."  <u>Siegel v. LePore</u>, 234 F.3d 1163, 1213 (11th Cir. 2000).   "In addition to succeeding on the merits, a plaintiff must demonstrate the presence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law."  <u>Id</u>.

**I. Sloss-Barry Has Shown Success on the Merit**

**A. Sloss-Barry Has Shown Success on its Anticybersquatting Claim.**

4.   Sloss-Barry has shown actual success on the merits on

its claim under the Anticybersquatting provision of the Lanham Act, 15 U.S.C. § 1125(d).

5.   Sloss-Barry is the rightful owner of the service mark ONE FEDERAL PLACE, which is used in commerce by Sloss-Barry to identify the real estate services it offers.  Waites has held the ONE FEDERAL PLACE domain names only for the use and benefit of Sloss-Barry.

6.   The ONE FEDERAL PLACE mark suggests qualities of the services provided by Sloss-Barry under that mark.  See Deiter v. B & H Indus. of Southwest Florida, Inc., 880 F.2d 322, 327 (11th Cir. 1989) ("Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive.").  Therefore, the mark is inherently distinctive and was protected as of the date of the initial use of the mark by Sloss-Barry.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768-69 (1992) (suggestive marks are inherently distinctive without a showing of secondary meaning); Coach House Rest. v. Coach & Six Rests., Inc., 934 F.2d 1551, 1559-60 (11th Cir. 1991) (same).

7.   In any event, by the time that Waites re-registered the domain names onefederalplace.com and onefederalplace.net on or

about September 15, 2003, the mark ONE FEDERAL PLACE had acquired distinctiveness and fame in the Birmingham commercial real estate market, as evidenced by the third party sources that refer to the services Sloss-Barry provides under that mark.

8.   At   the   time   Waites   registered   the   domain   names onefederalplace.com  and  onefederalplace.net  and  at  the  time  he used  the  domain  name  at  the  website  www.onefederalplace.com  to host his "Federal Website" that Waites registered and used Sloss-Barry's mark that was distinctive at the time of the registration of the domain name and is identical or confusingly similar to the ONE FEDERAL PLACE mark.  15 U.S.C. § 1125(d)(1)(A)(ii)(I).

9.   Waites' offer to transfer, assign, or sell the domain names to Sloss-Barry in consideration of forgiveness of all or part of the rent and expenses claimed in the collection lawsuit filed by Sloss Real Estate Group constitutes trafficking in the domain names.  Id.

10.  By  attempting  to  settle  the  rent  case,  Waites demonstrated a "bad faith intent to profit" from the ONE FEDERAL PLACE mark.  See 15 U.S.C. § 1125(d)(1)(A)(i).

11.  Waites claims that as early as September 2000, when he

18

first registered the domain names onefederalplace.com and
onefederalplace.net at the request of Sloss-Barry, he intended to
host a website that would provide information about the federal
government.  However, he did not inform Sloss-Barry of any such
intention.  Instead, he registered the two domain names at the
request of Sloss-Barry, allowed Sloss-Barry to reimburse him for
the on-line fees he incurred in obtaining the registration, and
acquiesced in the use of the domains by Sloss-Barry to host a
website for Sloss-Barry's new building project, One Federal
Place.


      12.  At the time that Waites registered the domain names, he
was performing a wide variety of computer services for Sloss-
Barry, including network hosting.  Waites was acting in Sloss-
Barry's    behalf    in    registering    the    domain    names
onefederalplace.com and onefederalplace.net.  See Terry, By and
Through Terry v. Phillips 66 Co., Inc., 591 So. 2d 33, 36 n.1
(Ala. 1991) ("To establish a principal-agent relationship
requires proof generally that the alleged agent acted in the
principal's behalf. . . ." (emphasis in original)).  A Sloss-
Barry representative testified that Sloss-Barry requested that
Waites obtain those domain names in September 2000, shortly after
Hodges & Associates had presented the ONE FEDERAL PLACE mark to
Sloss-Barry and Sloss-Barry had decided to use that mark.  There

also was evidence that Sloss-Barry reimbursed Waites for the charges he advanced on-line to pay for the registration. Finally, there was evidence that Waites had performed similar services for Sloss-Barry's affiliate, Sloss Real Estate Group, in the past; namely, the registration of the domain names slossrealestategroup.com and pepperplace.net. Waites' characterization of the events that he serendipitously decided to register the onefederalplace.com and onefederalplace.net domain names for his yet to be developed "Federal Website" and then agreed to let Sloss-Barry use "his" domain names is not credible.

13. The fact that Waites was acting as Sloss-Barry's agent in registering the domain names leads to the conclusion that Waites owed a fiduciary duty to Sloss-Barry and breached that duty by registering the onefederalplace.com and onefederalplace.net domain names in his name instead of that of Sloss-Barry. See Lauderdale v. Peace Baptist Church of Birmingham, 19 So. 2d 538, 541 (Ala. 1944). Therefore, Waites is required to convey the interest he wrongfully acquired over to Sloss-Barry. See Nye v. Lovelace, 228 F.2d 599, 603 (5th Cir. 1956).

14. The factors set forth in 15 U.S.C. § 1125(d)(1)(B)(I)-(IX) indicate Waites' bad faith intent to profit from the ONE

FEDERAL PLACE mark, including his lack of intellectual property, trademark, or business name rights in the name or mark, his intention to divert customers from Sloss-Barry's website for the One Federal Place project to his own site, his re-registration of both the onefederalplace.com and onefederalplace.net domains, and his offer to transfer or sell the domains to Sloss-Barry.

15.  Waites did not believe and did not have reasonable grounds to believe that his use of the domain names was a fair use or otherwise lawful.  See 15 U.S.C. § 1125(d)(1)(B)(ii).  In fact, the reasonable inference from the timing of the posting of the content of Waites "Federal Website" and inconsistencies in his testimony concerning the creation of that site is that Waites attempted to "manufacture" a bona fide use of a domain name that could use the One Federal Place mark in good faith.  A defendant who acts even partially in bad faith in registering and using a domain name is not, as a matter of law, entitled to benefit from the fair use safe harbor.  See Virtual Works, Inc. v. Volkswagen of America, Inc., 238 F.3d 264, 270 (4th Cir. 2001).

**B. Sloss-Barry Has Shown Success on its Unfair Competition Claim**

16.  Sloss-Barry succeeds on the merits of its claims under 15 U.S.C. § 1125(a).  To prevail on that claim, Sloss-Barry must show it has rights in the ONE FEDERAL PLACE mark (which already

has been shown) and that its rights have been violated by use of a confusingly similar name or mark by Waites.  See  15 U.S.C. § 1125(a) (unfair competition liability for any person who "on or in connection with any goods or services, or any container for goods, uses in commerce any word, terms, name, symbol, or device, . . . which is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person"); Conagra, Inc. v. Singleton, 743 F.2d 1508, 1512 (11th Cir. 1984) (elements of a Lanham Act § 43(a) claim).

17.  The court next must determine whether Waites' use of "One Federal Place" on the content of his website and in the domain name onefederalplace.com is likely to cause confusion as to the affiliation, connection, association of Waites with Sloss-Barry or as to the origin, sponsorship, or approval of Waites' services by Sloss-Barry.  15 U.S.C. § 1125(a).

18.  The court applies the following test to determine whether likelihood of confusion is present: "(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity

between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales method; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion."   Alliance Metals, Inc. v. Hinley Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000).   The court has made factual findings on the factors of record, and also has made the ultimate factual finding that there is a likelihood of confusion.   Therefore, Sloss-Barry has prevailed on this claim.

**C.   Sloss-Barry Has Shown Success on the Alabama Dilution Claim**

19. Plaintiff has succeeded on the merits of its claims for dilution under the Alabama Antidilution statute, Ala. Code § 8-12-17 (Repl. Vol. 1993).

20. "Likelihood of injury to business reputation or dilution of the distinctive quality of a mark registered under this article, or a mark valid at common law, including a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Id.

21.  As noted in the court's prior holdings the mark used by Waites is identical to Sloss-Barry's ONE FEDERAL PLACE mark.

22.  The court holds that use of the ONE FEDERAL PLACE mark by Waites on an internet website is likely to dilute the ONE FEDERAL PLACE mark as it has been used by Sloss-Barry.  See Arthur Young, Inc. v. Arthur Young & Co., 579 F. Supp. 384, 389-90 (N.D. Ala. 1983).

## II.  Sloss-Barry Is Suffering Irreparable Injury Which Will Continue Unless an Injunction is Issued

23.  By its nature, trademark infringement causes irreparable harm.  See, e.g., Tally-Ho, Inc. v. Coast Comm. Coll. Dist., 889 F.2d 1018, 1029 (11th Cir. 1989).  Also, the imposition of monetary damages is not an adequate remedy.

24.  Sloss-Barry has proven a substantial threat of irreparable injury.  See E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, 756 F.2d 1525, 1533-34 & n.36 (11th Cir. 1985) (trademark infringement and unfair competition case).  Here, in losing use of the internet domain name onefederalplace.com, Sloss-Barry has lost an important aspect of the continuing marketing plan for its One Federal Place building; namely, the place for its internet website.  Moreover, it has

24

lost control over the exclusive use of the mark ONE FEDERAL PLACE in an internet domain name with the top level domain ".com." Waites himself testified that the ".com" domain is the one preferred by mark owners as the most desirable internet domain. However, Sloss-Barry also has lost control over the onefederalplace.net domain. Again, as Waites testified, it is important for the owner of the ".com" domain to obtain other top level domains such as ".net" to prevent others from obtaining a potentially confusing domain that uses the mark at issue. Finally, Sloss-Barry presented undisputed testimony that it was suffering damage to its reputation with its venture partner, tenants, and likely with consumers due to Waites actions. Sloss-Barry also presented undisputed testimony that money damages would not make it whole, and injunctive relief is required. The Court therefore holds that Sloss-Barry has shown that it is suffering irreparable injury and that it will continue to do so unless an injunction issues.

### III.  Injury to Plaintiff Outweighs Injury to Defendant

25. The court also finds that the injury to Sloss-Barry outweighs injury to Waites. Sloss-Barry has used the ONE FEDERAL PLACE mark and has used the onefederalplace.com domain name since approximately September 2000. It has extensively advertised its services at that site and through the use of that mark. On the

other hand, prior to September 15, 2003, Waites had never used either the domain name or the mark.   Moreover, the evidence shows that the "Federal Website" content he presently has posted at the www.onefederalplace.com domain  easily could be posted at another site with another domain name that conveyed the same message (a federal information website) that did not use Sloss-Barry's mark. Waites has no investment in any advertising or other promotion for his site.

## IV.   Issuance of an Injunction Does Not Disserve the Public Interest

26. The public has a strong interest in not being confused or misled concerning the source or origin of Waites' services, the affiliation between Sloss-Barry and Waites, or the sponsorship or approval of Waites' services by Sloss-Barry.   See Standard and Poors Corp. v Commodity Exchange Inc., 683 F.2d 704, 711 (2nd Cir. 1982); Council of Better Business Bureaus, Inc., 200 U.S.P.Q. 282, 301 (S.D. Fla. 1978) ("the public as a whole has a paramount interest not to be confused by Defendant's infringement").   Likewise, under the Lanham Act's anticybersquatting provision, 15 U.S.C. § 1125(d), that provision was passed with the multiple purposes of protecting consumers and businesses, promoting growth of on-line commerce, and providing clarity in the law for trademark and service mark owners.   See

<u>Mattel, inc. v. Internet Dimensions, Inc.</u>, 55 U.S.P.Q.2d 1620 (S.D.N.Y. 2000). Here, that interest of the public is best met by issuance of an injunction.

27. Sloss-Barry therefore, has shown that issuance of a permanent injunction would not disserve the public interest.

* * * *

An appropriate injunctive and declaratory order will be entered separately.

DONE this _____ day of October, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE